UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) 2:21-cr-133-JDL |
| | ) |
| JASPER ORNE, | ) |
| | ) |
| Defendant. | ) |

### ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS

Jasper Orne is charged with access with intent to view child pornography and possession of child pornography, both in violation of 18 U.S.C.A. § 2252A(a)(5)(B) (West 2022). Orne moves to suppress (ECF No. 32) the data obtained from his Dropbox account. That data was contained in a CyberTipline Report sent by Dropbox to the National Center for Missing and Exploited Children ("NCMEC") and then sent by NCMEC to Maine law enforcement. Orne also moves to suppress (ECF No. 30) statements that he made to law enforcement officers on February 12 and 15, 2019. An evidentiary hearing on the motions was held on May 9, 2022. For the following reasons, I deny both motions.

### I. FACTS

The facts are drawn from the record of this case, which includes the audio recordings of the February 12 and February 15 interviews and the exhibits and testimony that were received during the evidentiary hearing.

**A.  Dropbox**

Dropbox offers online file-syncing and collaboration services to users. Dropbox users may keep their files private or share them with the public or selected Dropbox

1

users. Under Dropbox's Terms of Service, which incorporate the company's Acceptable Use Policy, users may not utilize Dropbox's services to "publish or share materials that are unlawfully pornographic or indecent" or that otherwise "violate the law in any way." ECF No. 36-1 at 1. Dropbox maintains a content-safety team that monitors and removes content that violates the Terms of Service. When Dropbox identifies content that is, or appears to be, child pornography as defined in 18 U.S.C.A. § 2256 (West 2022), it reports that content to NCMEC through NCMEC's CyberTipline, in accordance with the obligations imposed on certain companies by 18 U.S.C.A. § 2258A (West 2022).

On December 26, 2018, Dropbox submitted a CyberTipline Report to NCMEC. The Report included files that Dropbox believed contained apparent child pornography from an account connected to Orne's email address. The report included 601 files, each of which were reviewed by a Dropbox employee prior to the submission to NCMEC. NCMEC reviewed these same files, determined that they contained what appeared to be child pornography, and made the report available to the Maine State Police through the Northern New England Task Force. Special Agent Justin Kittredge, then of the Lewiston Police Department and assigned to the Maine State Police Computer Crimes Unit, reviewed the report and accompanying files prior to obtaining a search warrant.[1] After SA Kittredge conducted this review, he utilized the information in the report to apply for and obtain search warrants for Orne's residence and the Dropbox account identified in the report.

---

[1] Kittredge now serves as a Detective with the Brunswick Police Department. He is referred to as "SA Kittredge" in this order to reflect his role at the time of the investigation.

## B.  February 12 and 15, 2019 Interviews

SA Kittredge, along with his partner and approximately six members of the Maine State Police Computer Crimes Unit, executed the search warrant on Orne's residence on February 12, 2019.  SA Kittredge was armed that day but did not brandish his weapon and wore plainclothes.  No one was home when the officers arrived, so SA Kittredge contacted Orne's wife by phone to let her know that they were conducting an investigation in the area and to ask that she return home.  Approximately 10 minutes later, SA Kittredge met Orne and his wife in their driveway.  SA Kittredge asked Orne if he was armed, and Orne confirmed that he was.  SA Kittredge removed Orne's firearm from his hip and placed it in Orne's vehicle for safekeeping.  SA Kittredge told Orne that the reason the officers were at Orne's home was because there was unusual activity associated with Orne's Dropbox account.  Orne's wife was present for portions of the interview.

Orne initially informed SA Kittredge that he did not have a Dropbox account, that his email account that was connected to the Dropbox account in question had been hacked years earlier, and that he never accessed the Dropbox account.  SA Kittredge questioned this assertion while informing Orne that "you're not going to get arrested," and that SA Kittredge just wanted Orne to be honest with him.  ECF No. 30-1 at 3.  Orne continued to maintain that he did not know about the Dropbox account or about child pornography contained in the account.  In response, SA Kittredge told Orne that he knew that the account was being accessed from Orne's residential address.  SA Kittredge reiterated that "no one's getting arrested."  ECF No. 30-1 at 7.  Orne told SA Kittredge that he was nervous and that he had memory

3

issues connected to post-traumatic stress disorder ("PTSD"), and SA Kittredge repeatedly offered to let Orne take some time to gather his thoughts, get a drink of water, speak with his wife, or go into the house.

At one point when Orne's wife was present, SA Kittredge told her that he believed that Orne was responsible for the child pornography in the Dropbox account and said again that "no one's going to get arrested, no matter what." ECF No. 30-1 at 16. After further questioning by SA Kittredge, Orne admitted that he had uploaded the images to the Dropbox account, first explaining that he did so to try to bait a family member who had molested Orne when he was a child and ultimately admitting that he uploaded the images for his own use. SA Kittredge praised Orne for his honesty, and when Orne asked about what would happen to him and his children, SA Kittredge responded that "we can't see the future, but today's the day the monkey's off your back." ECF No. 30-1 at 25. SA Kittredge told Orne that he would need to make reports both to the Maine Department of Health and Human Services and the District Attorney's office, and that the District Attorney could ultimately charge Orne with a crime. The February 12 interview lasted approximately one hour and six minutes.

SA Kittredge interviewed Orne a second time on February 15, 2019, at the Togus Veterans Association Medical Center, where Orne was receiving treatment for anger management and impulsivity. During this interview, SA Kittredge asked Orne further questions about the child pornography images associated with the Dropbox account, including how Orne obtained those images. Orne admitted to obtaining the images from a website and uploading them to his Dropbox account. SA Kittredge told

Orne at the end of the interview that although Orne would likely face consequences, the officers were not trying to make his life difficult. This second interview lasted approximately 25 minutes.

On August 18, 2021, Orne was indicted (ECF No. 21) on one count of access with intent to view child pornography and one count of possession of child pornography, both in violation of 18 U.S.C.A. § 2252A(a)(5)(B).

## II. LEGAL ANALYSIS

Orne first contends that the search of the contents of his Dropbox account by Dropbox, Dropbox's provision of information regarding the account to NCMEC, and NCMEC's subsequent provision of that information to Maine law enforcement violated his Fourth Amendment rights. Orne asserts that Dropbox functioned as a government actor in conducting the initial search of the account that uncovered images depicting child pornography and that led to the generation of the CyberTipline Report to NCMEC and the subsequent law-enforcement investigation. He therefore reasons that a warrant was required for the search and, because none was obtained, the CyberTipline Report sent by Dropbox to NCMEC and then by NCMEC to Maine law enforcement must be suppressed.

Second, Orne asserts that the statements he made to SA Kittredge on February 12 and 15, 2019, were involuntarily obtained in violation of the Fifth Amendment because the February 12 statements were induced by Agent Kittredge's multiple assurances that Orne would not be arrested, and that when Agent Kittredge interviewed him at the Veterans Affairs hospital on February 15, Orne was receiving

treatment for mental health issues. Thus, Orne argues, his inculpatory statements made on both dates should be suppressed.

I proceed by first addressing Orne's Fourth Amendment argument regarding the Dropbox account, and then consider Orne's Fifth Amendment argument regarding the interviews.

### A. The Warrantless Search of Orne's Dropbox Account Did Not Violate the Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This protection does not apply "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). The defendant bears the burden of showing that a private party acted as a government agent in the Fourth Amendment context. *United States v. Cameron*, 699 F.3d 621, 637-38 (1st Cir. 2012); *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020); *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020).

The First Circuit has established that a court must consider three factors when determining whether a private party has acted as a government agent in conducting a search: "(1) 'the extent of the government's role in instigating or participating in the search'; (2) '[the government's] intent and the degree of control it exercises over the search and the private party'; and (3) 'the extent to which the private party aims

6

primarily to help the government or to serve its own interests.'" *Cameron*, 699 F.3d at 637 (alteration in original) (quoting *United States v. Silva*, 554 F.3d 13, 18 (1st Cir. 2009)). Finally, under the private-search doctrine, a law enforcement officer may conduct a warrantless search of "evidence that a private party has unearthed and made available" to the officer, as long as the officer's "actions remain within the scope of the antecedent private search." *United States v. Rivera-Morales*, 961 F.3d 1, 4 (1st Cir. 2020).

Orne contends that Dropbox acted as a government agent when it reviewed his Dropbox account and provided a CyberTipline report, including the files of suspected child pornography, to NCMEC, which in turn provided the report and files to law enforcement. Orne argues that NCMEC is a government agent because it reviews reported child pornography and forwards those reports to law enforcement pursuant to 18 U.S.C.A. § 2258A. Orne also argues that Dropbox acted as an agent of NCMEC when it searched his account because, he contends, there is no evidence that Dropbox acted in its own private interest and had no independent reason, such as a tip, to review Orne's account. The Government responds that Dropbox acted to advance its independent business interest in ensuring that its services remain free of illegal content, including child pornography, when it searched Orne's account and identified the files that it then reported to NCMEC.

I am not persuaded by Orne's argument for three reasons. First, Orne has not demonstrated that the Government instigated or participated in the original search conducted by Dropbox. There is no evidence suggesting that Dropbox searched Orne's account in response to a Government tip or directive, or that the Government

participated in the search in any capacity. Second, Orne has not shown that the Government exercised any control over Dropbox's search of Orne's account. The fact that Dropbox is required by federal statute to report known child pornography discovered on its site to NCMEC does not mean that the government instigated or controlled the search that revealed the files that contained the suspected child pornography, and the facts here indicate that Dropbox conducted the search pursuant to its own internal policy of reviewing accounts for compliance with its Acceptable Use Policy as incorporated into the Terms of Service. *See Cameron*, 699 F.3d at 637 ("[T]he statute did not impose any obligation to *search* for child pornography, merely an obligation to *report* child pornography of which [the company] became aware."). Third, I find that Dropbox conducted the search to further its independent business interest in attempting to ensure that its site does not host illegal content, including child pornography. As the First Circuit has observed, a private actor's interest may "overlap[] with the government's goal of combatting child pornography," but this confluence of motives does not transform the private actor into a government agent. *Rivera-Morales*, 961 F.3d at 9. Orne has not carried his burden to show that Dropbox searched his account as a government agent.[2]

I also conclude that Orne has not demonstrated that NCMEC or SA Kittredge exceeded the scope of the search that Dropbox conducted. A Dropbox employee viewed each of the files included in the report to NCMEC. These files were then reviewed by NCMEC and by SA Kittredge; neither NCMEC nor SA Kittredge viewed

---

[2] I do not need to resolve and, therefore, do not reach, the question of whether NCMEC was a government agent, because even if NCMEC were a government agent, Orne has not established that Dropbox acted as NCMEC's agent. *See Miller*, 982 F.3d at 426.

any of the files from Orne's Dropbox account that were not initially reviewed by a Dropbox employee during the initial search. Thus, under the private-search doctrine, the searches conducted by NCMEC and by SA Kittredge did not violate the Fourth Amendment.

### B. Orne's Statements to Police on February 12 and 15, 2019, Were Made Voluntarily

Orne argues that the Government has not met its burden to show that the inculpatory statements he made to SA Kittredge on February 12 and February 15 were voluntary. He contends that his statements on these dates were involuntary because he made them in reliance on SA Kittredge's assurances that he would not be arrested and because Orne's traumatic head injuries, PTSD, and multiple orthopedic injuries from his military service made him particularly vulnerable to coercion.

The test for voluntariness is "whether the will of the defendant ha[s] been overborne so that the statement was not his free and voluntary act." *Bryant v. Vose*, 785 F.2d 364, 367-68 (1st Cir. 1986) (quoting *Procunier v. Atchley*, 400 U.S. 446, 453 (1971)). This test is to be resolved "in light of the totality of the circumstances." *Id.* at 368 (quoting *Procunier*, 400 U.S. at 453). Where a defendant claims that his confession was extracted involuntarily, it is the Government's burden to show that, based on the totality of the circumstances, the investigating agents did not overbear the defendant's will. *United States v. Jacques*, 744 F.3d 804, 809 (1st Cir. 2014); *Chambers v. Florida,* 309 U.S. 227, 239-40 (1940); *see also Colorado v. Connelly,* 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding

9

that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment.").

Relevant considerations to determine the voluntariness of a defendant's statements include "the length and nature of the questioning, promises or threats made by investigators, and any deprivation of the suspect's essential needs." *Jacques*, 744 F.3d at 809. Other factors are also relevant, such as the defendant's "age, education, intelligence, and mental condition, as well as his prior experience with the criminal justice system." *Id.* (citation omitted).

The Government has satisfied its burden to prove, by a preponderance of the evidence, that SA Kittredge did not overbear Orne's will and, thus, that Orne's inculpatory statements were made voluntarily. On February 12, 2019, SA Kittredge interviewed Orne at Orne's home. SA Kittredge was in plain clothes, did not brandish his weapon, and did not restrict Orne's movement. The interview took just over an hour, a relatively short length of time. SA Kittredge repeatedly checked in with Orne to ensure that he remained comfortable, and he permitted Orne to speak with his wife and go inside and out of his home as he needed to. After Orne told SA Kittredge that he struggled with memory issues and PTSD, SA Kittredge asked:

> Do you need something? I mean if you need anything, you guys listen, if it hasn't been made clear, I appreciate you guys coming here. I know that this is, I've not been in this situation, but I'm sure it's an unusual, surprising situation. Um, but if you guys need something, a drink, fresh air, chit chat, whatever, feel free you know. You don't have to talk to us and we appreciate you actually talking to us.

ECF No. 30-1 at 13-14.³  SA Kittredge also made repeated assurances that Orne would not be arrested.  Although the Government argues that these assurances were tempered by SA Kittredge's explanation to Orne that he could face consequences, including indictment, at a later date, I note that this additional explanation was not provided until after Orne made his inculpatory statements.  However, considered in light of the totality of the circumstances, I conclude that SA Kittredge's assurances did not overbear Orne's will and induce his confession.

I also find that the setting of the February 15 interview, a Veterans Affairs hospital where Orne was receiving treatment for his mental health issues, did not amount to police coercion.  Orne does not specifically challenge other aspects of the February 15 interview and neither the setting, the manner of questioning, nor Orne's preexisting mental health conditions support the conclusion that Orne's statements were improperly induced or were not the product of his free will.

### III. CONCLUSION

For the foregoing reasons, Orne's Motions to Suppress (ECF Nos. 30, 32) are **DENIED**.

**SO ORDERED.**

Dated:  June 6, 2022

                                                                           /s/ JON D. LEVY
                                                                    **CHIEF U.S. DISTRICT JUDGE**

---

³ The language in this quotation has been revised from the transcript to more accurately reflect the audio recording of the interview provided to the Court.